IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RPOST HOLDINGS, INC., RPOST COMMUNICATIOS LIMITED, and RMAIL LIMITIED,<br><br>  Plaintiffs<br><br>v.<br><br>EXACTTARGET, INC. ET AL.<br><br>  Defendants | Case No. 2:-12-CV-512-MHS-RSP |

## ORDER

Before the Court is Defendant Citigroup Inc.'s ("Citigroup") Motion to Stay Litigation Pending Determination of State Court and Bankruptcy Court Actions (Dkt. 74, filed January 13, 2014) ("Motion"). Having fully considered the parties' arguments and for the reasons set forth herein, the Court hereby **GRANTS** Citigroup's Motion to Stay and the above actions are hereby **STAYED** and are ordered **ADMINISTRATIVELY CLOSED**.

## I. BACKGROUND

Defendant Citigroup has moved to dismiss, or in the alternative, to stay its case pending a determination of ownership of U.S. Patent No. 6,182,219 ("the '219 Patent"). (Mot. at 1). RPost Holdings, Inc. ("RPost Holdings"), RPost Communications Limited ("RPost Communications"), and Rmail Limited (collectively, "Plaintiffs") oppose. (Response at 1). Specifically, Citigroup's bases its Motion on the pending determinations of California state and United States Bankruptcy actions involving allegations that dispute Plaintiffs' right to sue on the '219 Patent. (Mot. at 1–3).

The '219 patent was originally owned by Authentix-Authentication Technologies, Ltd. ("Authentix") and sold to RMail Limited for $800,000. RPost International loaned RMail

Limited $550,000 to finance part of the purchase price of the '219 patent as memorialized by a promissory note. In conjunction with the promissory note, RMail Limited granted RPost International an exclusive license to the '219 patent in the email field of use.[1] RPost International in turn granted RPost Holdings (at the time a subsidiary of RPost International) an exclusive field of use to the '219 Patent. RPost Communications acquired RPost Holdings, as well as the promissory note and exclusive license to the '219 Patent, from RPost International as part of the March 21, 2011 transaction. There is no dispute that RPost International never held title to the '219 Patent. Nonetheless, the right to enforce the '219 Patent is closely tied to the allegedly fraudulent transfer of assets between RPost International and RPost Communications.

The '219 Patent is also asserted in the following actions: *Rmail Limited v. Amazon.Com, Inc., et al*, Case No. 2:10-cv-258 ("the Amazon action"); *RPost Holdings, Inc. et al. v. Constant Contact, Inc.*, Case No. 2:12-cv-510 ("the Constant Contact action"); *RPost Holdings, Inc. et al v. Epsilon Data Management, LLC*, Case No. 2:12-cv-511 ("the Epsilon Data action"); and *RPost Holdings, Inc. et al. v. Infogroup, Inc. et al.*, Case No. 2:12-cv-517 ("the Infogroup action") (collectively, "Related Actions"). On January 30, 2014, the Court administratively stayed all Related Actions.

## II. RELATED PROCEEDINGS

### a. California State Actions

The two California state court proceedings are *Kenneth Barton v. RPost International Ltd., Zafar Khan, and Terrance Tomkow*, Case. No. YC061581 ("Barton 581") and *Kenneth*

---

[1] This transaction also involved granting an exclusive field of use to a continuation of the '219 Patent (U.S. Patent 6,571,334 ("the '334 patent")). Because the '334 Patent is not in dispute here, additional facts relating to this transaction have be omitted for clarity.

*Barton v. RPost International Ltd., RMail Ltd., and RPost Communications Ltd.*, Case. No. YC065259 ("Barton 259").

Barton 581 was brought by Kenneth Barton ("Barton"), a former officer of RPost International, against RPost International and four of its five directors, including Zafar Khan ("Khan"), and Terrance Tomkow ("Tomkow") for fraud and breach of fiduciary duty. Barton 581 went to trial last year and judgment was entered in favor of the plaintiff. RPost International, Khan, and Tomkow were found to have committed fraud and were held jointly and severally liable for actual damages of $3.2 million. Punitive damages were also imposed against Khan and Tomkow. The judgment is on appeal before the California Court of Appeals, Second Appellate Division.

Barton 259 involves allegations of fraudulent transfer of assets from RPost International to RMail Limited and RPost Communications during the capitalization plan of March 21, 2011. Both RMail Limited and RPost Communications are parties to the present litigation. In Barton 259, the plaintiff seeks to void the transfer of those assets, which includes intellectual property, to RMail Limited and RPost Communications. It specifically identifies the '219 patent as one such intellectual property. Barton 259 is scheduled for a trial before a jury and is set to commence on November 3, 2014.

      b.      **Bankruptcy Proceedings**

There are also several related bankruptcy proceedings in California. Khan and Tomkow each petitioned the United States Bankruptcy Court in California for Chapter 13 bankruptcy protection following entry of judgment in Barton 581. (*See In re Zafar David Khan*, No. 2:13-bk-19713-VZ and *In re Terrance Alexander Tomkow*, No. 2:13-bk-19712-WB).

Barton filed an adversary proceeding to convert Khan and Tomkow's bankruptcy petitions from Chapter 13 to Chapter 7, and this conversion has been granted. (*See Barton v. Khan*, No. 2:13-cv-ap-1752-VZ and *Barton v. Tomkow*, No. 2:13-cv-1751-WB). Khan and Tomkow are both appealing that ruling and Barton's adversary proceeding has been stayed until further notice.

In addition to Barton's challenge, Thomas Burke and 126736 Canada, Inc. also filed shareholder derivative actions on behalf of RPost International, RPost Communications, and RMail Limited in the Khan and Tomkow bankruptcies. (*See Burke et al. v. Khan*, No. 2:13-cv-ap-1773-VZ and *Burke et al. v. Tomkow*, No. 2:13-cv-1774-WB). Khan and Tomkow moved to dismiss the complaints for lack of standing and the court granted dismissal. As a consequence, Burke and 126736 Canada, Inc. have since filed a Second Amended Complaint, which is now pending and which Khan and Tomkow are again seeking to have dismissed.

### III. MOTION TO STAY

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citations omitted). Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts typically consider three things when deciding whether to stay litigation pending reexamination: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC,* 356 F. Supp. 2d at 662 (citation omitted). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based

on these factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv- 81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

In determining whether to grant Citigroup's requested stay, the Court must analyze the three factors under *Soverain Software LLC*.

      **a.**      **Whether a Stay Will Simplify Issues in Question and Trial of the Case**

With regard to the first factor, Citigroup argues granting a stay will neither unduly prejudice the Plaintiffs, nor present a clear tactical disadvantage to Plaintiffs. (Mot at 11). Specifically, Citigroup cites to the Plaintiffs' four-year delay in filing suit against Citigroup and further avers Citigroup will be unduly prejudiced if it is forced to litigate a matter against Plaintiffs when ownership of the '219 Patent is clearly in dispute. (*Id.*). Plaintiffs argue a stay will create undue prejudice and that they have a strong interest in the timely enforcement of their patent rights before the related state and bankruptcy proceedings are concluded. (Response at 11). The Court disagrees.

By granting Citigroup's request stay, Plaintiffs will have an opportunity to litigate the ownership disputes in state court to determine the rightful patent owner. Denying the stay, as Plaintiffs urge, creates an inherent risk of undue prejudice by subjecting Citigroup to a multiple-suit litigation involving a patent with underlying issues of unresolved ownership. Indeed, Plaintiffs were aware that the California courts were attempting to resolve these underlying disputes *before* Plaintiffs' filing of the instant dispute. By granting Citigroup's requested stay, any uncertainty regarding ownership of the '291 Patent will be removed, thus streamlining the issues to be resolved in the instant dispute.

Accordingly, the first factor weighs strongly in favor of a stay.

### b. Whether a Stay Will Simplify Issues in Question and Trial of the Case

The second factor weighs in favor of granting the stay as well. By resolving the California-based disputes first—minimally—the issues for trial (*e.g.*, ownership of the '291 Patent, licensing/transfer agreement of the '291 Patent) will be simplified. Similarly, the entire instant action could be rendered moot should the California courts render final disposition of the ownership issue in a manner adverse to Plaintiffs. Indeed, this would be the ultimate simplification of the issues in question for the instant dispute.

Accordingly, the second factor weighs strongly in favor of a stay as well.

### c. Whether Discovery is Complete and Whether a Trial Date has been Set

With regard to the third factor, the instant dispute is still in its early stages regarding discovery and trial. Indeed, the Court has not entered a Discovery Order or a Docket Control Order and the parties still await their scheduling conference. As such, the Court concludes the case is in its early stages, thus favoring a stay. Accordingly, the third factor weighs in favor of a stay as well.

For the foregoing reasons, the Court finds that a stay pending resolution of the California state actions and the bankruptcy actions is appropriate in these particular circumstances.

## IV. CONCLUSION

Pursuant to the Court's inherent authority to manage its docket and based upon the foregoing reasoning, Citigroup's request for a stay is **GRANTED**.

The above actions are hereby **STAYED** and are ordered **ADMINISTRATIVELY CLOSED**. The parties are directed to jointly file a notice in each case setting forth full details and fully advising the Court on the then current status of such co-pending California state actions and bankruptcy actions beginning on December 1, 2014 and continuing every three months (quarterly) thereafter until further order of this Court.

**Signed this date.**
Sep 29, 2014

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE